Good morning. I'd like to reserve a minute of time for rebuttal. My name is John Lambrose. I'm here on behalf of Mr. Anthony Bailey, the appellant. The relief Mr. Bailey seeks in this appeal is an order from this Court vacating the judgment of the district court below, dismissing the petition with prejudice, and remanding with instructions that Mr. Bailey be allowed to plead an amended petition. Now, this case has a very complicated procedural history, and I think where I the best place to start in support of what I'm asking for is when I was originally appointed to address the Kelly v. Small issue that was certified by the Merits Panel, or excuse me, by the Procedure Panel before the case was briefed on the merits. We did full briefing on that, and I briefed two uncertified claims. The second uncertified claim, I think, is the more compelling claim because it deals with the default. And that's really what you need us to do, isn't it, counsel? Absolutely. You don't need the certified issue. You admit that that's, basically admit that that's moved. Well, I don't think it's completely moved in light of the fact that when we were – when the Merits Panel remanded back down in light of Rhines, I think a component – because here's what it was so puzzling to me. Before that, the case was completely briefed on the merits of the Kelly issue. I went into State court, got relief from Mr. Bailey. His sentence was reduced to 10 years. He was a free man. I notified the court, the Ninth Circuit of this development, in an amended bail notice. Several months later, the case was set for oral argument, and I was surprised by that, quite frankly, because I thought, well, you know, the Kelly issue has kind of gone away now. So when they – when the panel set the case for oral argument, I thought maybe the panel was thinking about discussing the uncertified claims. And then the oral argument was vacated, and we got this Rhines remand. And the only thing I could read into the Rhines remand, in light of, again, the fact that I had advised the panel, the court, that claim three was mooted, that the only issues before the court were – the only issues, really, that needed to be resolved in federal habeas corpus were issues dealing with Mr. Bailey's conviction, not his sentence. So when I was reading tea leaves here, I thought maybe what this Merits Panel is doing, because they're retaining jurisdiction. And I've got to tell you, in the 27 years I've practiced in front of this Court, I've only seen that happen once. They retain – that panel retained jurisdiction. And editorial aside, I like that panel for my case. It was a good panel to be retained in jurisdiction. So I went back down to the court. Roberts. Mr. Lambros, the Court appreciates your frankness. Lambros. Candor. Candor to the Court. When I went back down to the court, the Court appreciates your frankness. When I went back down to Judge Reed, I really, in all honesty, thought that what I was – you know, what I was sort of impliedly doing by the remand was seeing if we could get back to where we would have been in March of 2003 if Anthony Bailey had been represented by counsel that knew something about habeas corpus. And if we had been able to do that, as I – you know, I'm just restating my brief now, but in summary, if we had been able to do that, I would have been able to counsel – again, I don't mean to flatter myself – but we would have been able to explain to Judge Reed, we've got a dead-bang winner on this sentencing issue. Please hold it. Can I take a run at where I think you are on this? Sure. Okay. If I understand your position, I think the critical part of your brief now is now found in pages, what, 30 to 34. Yes. And that you have two arguments. And one is that – and was it Judge Reed or was it Judge Hagan who initially dismissed all of these as unexhausted? Judge Hagan originally dismissed them. And Judge Reed picked it up. No. And then Judge Hagan – see, when he entered the – I'm not going to give you Kelly relief order. He ordered the State to file an answer. The State – Who found – who originally issued the order finding that all of these claims were unexhausted in Nevada? Judge Hagan. Judge Hagan. Yeah. And then – all he found was one claim, unexhausted, claim three. And then about a month later, without giving Mr. Bailey, in proper person, an opportunity to respond to the default motion that the State incorporated in their answer. I'm sorry. I didn't mean the default, right? Yeah. They slipped into their answer a procedural default request again. And Mr. Bailey never got an opportunity to respond to that. Okay. So I think you have sort of two points in your argument at pages 30 to 34. The first is that you never got an opportunity to answer the default argument from the government. That the order was issued without Mr. Bailey ever even getting an answer to respond to that. And I gather that you think you may have an answer to that. Yes. And in all – again, in all candor, he's never had a meaningful opportunity. Because I know the State's going to stand up here and say, oh, he got a chance to file an opposition to the motion to dismiss. But, you know, Mr. Bailey didn't know what he was doing. And I can tell you right now, yeah, I have a great – I have a great argument that at least three – two grounds are exhausted on the merits and federalized. So you think that you've got – that you can get around – that you can get around the State's argument of default? Yes. Okay. Now, then the second part of your argument, I think, has to be that not only did you not get an opportunity to do that, but if presented with an opportunity that you think that you have some merits to that. Yes. I want to make sure that I think what's survived here are counts 5, 6, 7, 8, 9, and 10. That is, counts 5 through 10. Everything else I think is gone from the case. No. What's gone from the case are counts 1 through 12, excluding 3, which – well, I'm sorry. Let me – I'm sorry. The only thing that survives is 5 through 10. Which are the counts that deal with the conviction and not the sentence. That's correct. I believe so. You've got arguments there about appellate counsel, Sixth Amendment violations, due process violations, and unconstitutional error during the grand jury proceedings. So you've got 5th, 6th, ineffective assistant counsel, which would also be a 6th, and due process arguments. That makes sense. As long as I can characterize them as anything that deals with the underlying conviction. But I think it's just – I think of the 12 arguments that he made, I think it's only 5 through 10. Yeah. But can I just kind of clarify that a little bit? These are Mr. Bailey's 12. If I get a chance to go back and replete the amended – replete an amended petition, my claims are going to be a little bit different. But I can assure this Court that they're going to be exhausted. And several of them are going to be exhausted without any procedural impediment. For example, the sufficiency of the evidence with regard to the conviction on possession of stolen property, the only conviction that remains. That is a clean, exhausted, federalized claim. Also, there's a – there's a – an ineffective assistance of appellate counsel with seven subclaims. That is a clean, as I call it, exhausted, federalized claim. In other words, these are claims that Mr. Bailey did not present in his original petition for habeas corpus in this Court, but that if you were allowed to amend the petition, you would add. Yes and no. He didn't present the sufficiency of the Jackson claim with regard to the possession of stolen property. I believe he did present, although inartfully, the ineffective assistance of appellate counsel claim with the seven subparts. And then the reason for – the reason why all of this is not moot right now is because you don't – you think that you've got enough to overturn the conviction completely. Yes. Okay. Yes. Now, why isn't your – why isn't your relief at this point quorum nobis rather than habeas? Well, I hadn't thought about that. I think – And wouldn't it just be cleaner to start with a petition for a writ of quorum nobis instead of us going through a procedure that would allow you to go back and amend a, you know, a decade-old habeas petition to add all kinds of stuff that wasn't there 10 years ago and has been through – you know, the procedural history on this – on this case is daunting. It is. But, you know, quite frankly, I'm going to plead ignorance. I'm really not familiar with what quorum nobis – where quorum nobis gets me. Yeah. Well, quorum nobis is usually what's available to somebody who has served the prison term and is no longer in jail. Oh, I see. I see. It's to get rid of the collateral consequences of a bad conviction. And typically we don't – typically we don't moot a case on habeas just because somebody's been out. But just in light of the fact that you want to add additional claims here and in light of the complexity of this case, I'm wondering whether quorum nobis might be a better vehicle for you, might be a little cleaner vehicle, so that we don't have to argue about what we argued about. It would just be a clean start and you and the – you and Nevada could start all over again, shake hands and start all over again. The – that sounds great to me so long as this court instructs the district court that that's what we're going to do. So I don't have to – you know, so I don't have to go through the rigmarole of filing a quorum nobis writ, having Mr. Whelan challenge it on 17,000 procedural grounds, and then we're back up here talking about this again. I mean, if the remand order says what we decided to do here was give Mr. Bailey the opportunity to cancel out his conviction via quorum nobis by presenting his federalized constitutional exhausted claims free of default impediments, then, yeah, I can live with that. I used to – Now, how could we – how could we instruct a court – how could we draw the conclusions about free of defaults? Well, I mean, that would be up to the district court. The district court would – But the government would still be free to argue that you – Sure. Yeah. That Mr. Bailey has already presented these or not presented these, and therefore they're free on quorum nobis. Absolutely. And I'm just assuming – again, I plead ignorance on quorum nobis, and I shouldn't. I should know something about this, and I apologize. But I'm just assuming that the federal habeas law would be imported into this. In other words, I would have to show – I would have to have exhaustion. I would have to have claims free of procedural default impediments, that kind of thing. And I'm confident I can do that. I really am. I think that, you know, if we had been his lawyer in 2003, we wouldn't be here in 2007. I think we understand your position. We'll afford you any additional time that we need to. Let's hear from the government on this and see if we can figure out where we're going. I appreciate it. May it please the Court, counsel, my name is Robert Whelan. I'm senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing the respondents in this particular matter. As I related in our answering brief, it's our position that this Court doesn't have jurisdiction to consider any of the purported issues that Mr. Lambros has commented on or anything else in this particular matter. Previously, the panel remanded it for consideration in light of Kelly v. Small. There was an order that came out for, you know, once Rhines came into being. After that, the petitioner through counsel filed a petition for reconsideration that was untimely. And then the petitioner brought this appeal for which no certificate of appealability has been granted with respect to any of the issues. Subsequent to that, about a week ago, this Court directed the petitioner to submit a letter brief trying to explain why this is not moot. The petitioner submitted a letter brief basically saying, well, it's not moot because, you know, we filed the petition while he was in custody. Well, all that does is get him, gets his toe in the door. It doesn't have anything to do with respect to ground three. Ground three was a claim that the Court erred in sentencing as a habitual criminal. Okay. Let's suppose that we agreed with at least one proposition. Let's suppose that we agree with you that the certified issue is fundamentally moot. Let's suppose that we disagree with you as to whether we have jurisdiction to hear this case. Now, can you address the colloquy that I've had, that we've had with Mr. Lambrose today as to whether, one, whether the, whether the, whether Mr. Bailey was not given an opportunity to respond to the State's default argument so that he never be. Well, that's clearly not the case.  No, it is not the case. He had the opportunity to respond, and indeed, as I recall, the Court noted that he had not responded. Can you get us a citation for that, counsel? Thank you. Thank you. As I remember, on March 21st, 2003, the petitioner apparently did file an opposition that said document number 48. He may not have raised a particular argument. The counsel now lamented the wishes that he would have. And that was, that was previous to Judge Hagan finding the State that, that accrediting the State's default argument and ruling that all of these, these were procedurally defaulted. Is that correct? That was in our motion to dismiss, Your Honor. Right. But what I'm saying is that we did file an answer in which we asserted that the claims were procedurally defaulted. Right. And then I'm, and then you're telling me that docket number 48 is Bailey's response to your, to your claim that his, that his, that his claims were procedurally defaulted. Unexhausted, I believe, Your Honor. May I have just a moment, please? Yeah. Okay. That was, that was part of my colloquy with Mr. Lambrose. I, I said, I said, I said unexhausted and Mr. Lambrose corrected me and said defaulted. So I, it may make a difference here. Your Honor, we filed an answer dated July 7th, 2003. Okay. Claiming what? That his claims were procedurally defaulted. Claiming that ground one was not cognizantable, that... Okay. So this is your brief, then, was on the State's filing is on July 7th, 2003. Yes. Yes. On what date, then, did Judge Hagen rule in the State's favor on that motion? That would have been on August 13th, 2003, Your Honor. Okay. August 13th. And so a little over a month later, did Mr. Bailey file a response? To the answer, no, he did not. Between July 7th and August 13th, he did not file a response? No, he did not. Was he given an opportunity to respond? What would the rules have called for? Would they ordinarily have had to have... I mean, did he know that Judge Hagen was going to rule without hearing from him? I have no knowledge of what Mr. Bailey knew. I wonder if I could direct your attention to something slightly different. It seems like everyone agrees that count three is basically mooted at this point. So I'd like to focus on the uncertified questions. The reality is that whatever the benefits or lack thereof of Coram Novus at this point, based on what we have before us, we have two uncertified questions, and we really under our rules only get to those if a constitutional right that has been asserted has been denied, and that's the usual approach. In this particular case, according to my notes, the uncertified claim that he was improperly denied counsel during the habeas proceedings really doesn't succeed because he doesn't have a constitutional right to such representation. What would the State's position be on that? Without waiving any jurisdictional argument, it would be he doesn't even state a cognizable claim in a Federal habeas action. Right. I'll be interested in counsel for the defense's view on that. As far as the idea that Bailey was denied the opportunity to respond to the argument in his habeas claims, was he barred because he had not alleged a constitutional violation and he had an opportunity to respond to the argument in his opposition to the State's motion to dismiss his habeas petition? I'm sorry. I'm not sure I understand. Okay. What I'm trying to explore here is whether or not Mr. Bailey was denied an opportunity to respond to these two issues, whether or not he had alleged or whether there was a constitutional violation and whether he had an opportunity to respond to this argument in his opposition to your motion to dismiss the habeas petition. No, he wasn't barred. In fact, the judge, if the judge thought there was anything to talk about, the judge could have instructed him to respond. If I may, Your Honor, the point with respect to the Mr. Lambrose's arguments with respect to the mootness missed the point. The point before this Court is, is that with respect to Ground 3, the only thing that had anything to do with the Kelly v. Small issue, which this Court granted, he's already had relief. This Court back when decided not to grant a certificate of appealability on any other issue, no certificate of appealability has been granted with respect to any issue that could conceivably even be before this Court today. And that's really my question to you, is whether there is any other basis for any of the uncertified issues. No. No. There are no certificates of appealability with respect to any issue before this Court or should be, excuse me, that could conceivably be before this Court. Thank you. Counsel, I assume that the State would object vociferously to going back and starting over with the quorum nobis proceeding. We're not going to waive any procedural defenses or anything. I understand that.   I think that the State is going to voice a different opinion throughout this proceeding. It's not what Mr. Lambros is asking for this Court to do is he's saying oh, I could have made better arguments back when. I could have made better arguments back when. It's an ifs and buts. That's true. And I understand that point. That's a fair enough point. What I also understand him to be saying, that's why I questioned him very carefully about those dates, is that his client, that you came in and made an argument about procedural default, and he never even got to give a response to the judge before the judge decided that everything was defaulted. And he never even got a chance to tell the judge as to why it wasn't defaulted. And then in all the confusion over number three and so on, we moved on over these years without ever getting to those arguments. Three is clearly moved. Three is clearly moved. Well, I disagree with your assessment that he didn't have the opportunity. In the first place, the judge could have said I want a response from you, Mr. Bailey. But the judge didn't, and I think part of his argument is this is a violation of his due process rights. Well, I disagree with that. Well, if the judge – if you've made an argument that he's procedurally defaulted and the judge never heard from the other side as to why he wasn't procedurally defaulted, then doesn't that raise at least some question as to whether the judge has given everybody sort of a full and fair hearing? Well, even if you accept that premise, there wasn't any certificate of appealability sought on that issue. No certificate of appealability was granted on that issue. And given the fact that it was this Court that sua sponte decided that there should be a certificate of appealability with respect to the Kelly v. Small issue, one would expect that this Court would have sua sponte granted a certificate of appealability with respect to the issue you just described. The Court chose not to, and he didn't ask for it. Thank you. Thank you, Mr. Whelan. Let me try to answer some of the questions that were presented. Mr. Lambros, I do want you to answer those questions. Were you already appointed counsel in 2003? No. I wasn't appointed until this Court appointed our office after the Kelly v. Small. Who had been representing Mr. Bailey in 2003, during the summer of 2003? He was pro se. He was pro se. Right. Was there any hearing held on the default motions? No. No. So the State simply said these are all procedurally defaulted. Bailey did not file a pro se response, and the Court didn't ask for anything, and then without a hearing then decided, have I got the procedure correct? Let me see if I can help you on this, Judge. What happened was Mr. Bailey files an amended petition pro se. Mr. Whelan files a motion to dismiss, arguing three asserted defenses. The first one was it was timely under 2244. The second one was many of the grounds were unexhausted. The third one was many of the grounds were defaulted. Judge Hagan entered an order in favor of Mr. Bailey on the 2244 issue. His order was in favor of Mr. Whelan with regard to grounds. Can I stop you for just one second? Yes. The motion was filed in the ordinary court session. Mr. Bailey would have received a copy of the State's pleadings, right? Yes. And the motion is at excerpts of record 321 through 355. Okay. So that would have been July of 2003. He filed a motion to Mr. Whelan filed a motion to dismiss on April 19, 2002. So you're saying then that the Court, without holding a hearing, just based on the pleadings, that he received and he didn't receive anything from Mr. Bailey. He received, when Mr. Whelan filed the motion, Mr. Bailey filed a pro se opposition. It can be found at 359 through 374. Mr. Bailey's pro se opposition with regard to the procedural default allegations is can be found at page 370. It says, and this is just Mr. Bailey's ignorance. I understand that, but the fact is, I mean, we all have empathy for pro se litigants, but the fact is Mr. Bailey received the State's petition. Yes. And motion, rather. Yes. He responded in writing. There was no hearing, but both parties responded. There was no due process issue. So he did file an opposition. Pardon me? He did file an opposition. He did. But I, if I can just continue. Then what, then what Judge Hagan did was we get the, I'm not going to give you a stay. Mr. Bailey abandons the now mooted out, ground three. And Judge Hagan orders an answer. So now in the answer filed on July 7th, 2003, Mr. Whelan brings back all of the procedural default arguments because there hasn't been an adjudication on the default. So that's still inchoate, for lack of a better word. All right? Now, Judge Bybee asked a very good question. The question was, what were the rules back then? Well, the rules back then were, because I was litigating this stuff, if the State filed an answer, then you had to get leave of court to file a traverse, okay, unless the court in their order said, upon receipt of the answer, you have 15 or however many days to file a response. He didn't give Mr. Bailey that chance. And 35 days later, we have the big default. Mr. Bailey never had an opportunity under, you know, I cited this in many cases, Thompson, and the U.S. Supreme Court's most recent decision in Day v. McDonough talks about the opportunity to respond triggers a due process right. And I'm still a little confused. When Mr. Bailey filed that opposition, and you quoted page 370 of the record. Yes. Addressing the procedural default. Right. What was the date of that? His opposition. Yeah. Was filed on December 2nd, 2002, and then three months later. Okay. So December 2nd. Okay. So December of 2002. But it's the State's motion, renewed motion in 2003. Yes. To which he does not get an opportunity to respond. Yes. And that's the crux of your contention is that it's the July 2003 State motion that the district court simply acts on. Right. But there has been some previous pleading and back and forth between them over the question of procedural default. Right. But Mr. Bailey didn't know what he was doing. And that segues into the question that Judge Smith asked with regard to the right to appoint an attorney in habeas. I agree. There is no Federal constitutional right, but there is a statutory right. And that's the argument I made. And under which statute are you relying on? The Criminal Justice Act. And I briefed it in my first uncertified question. And Mr. Bailey asked for counsel several times. He kept saying, you know, I need some help on this. And is he entitled constitutionally to have that? No. Not constitutionally, but statutorily. And we have a, you know, our district really errs on the side of appointing counsel. And this one slipped through the cracks. It really did. Because I have an office with six lawyers that does this stuff, noncapital habeas. And like I said, you know, and I'm not trying to flatter myself, if we had got this case, I don't think we'd be here today. So he didn't get a chance to file a response. Now, I want to talk, if I may, I know I'm going way over my time, but I want to respond to the other question that Judge Smith had with regard to the second uncertified question, the default. Now, obviously, my first argument, well, one of my arguments is the due process. I never got a chance to respond. Really, the better argument is several of these claims are not defaulted, because they were raised and reviewed in the first on direct appeal, the sufficiency of the evidence on the possession of stolen property. And the IAC appellate claim was raised and reviewed on the merits in State Post-Conviction No. 1. But the sufficiency of the evidence argument is one that has not yet been pled by Mr. Bailey in his original complaint. It's one that you would have to add in an amended petition. Yes. Yes. Okay. So that claim which you say is exhausted and not defaulted is one that is not yet before any court. That's a good point. It isn't. And, well, you know, and again, if I had just had to, because really when I got appointed this case as appellate counsel, the first thing I do, because I have the right to bring uncertified issues under 221E, is get the whole record. I want to make sure nothing was missed. And thank goodness, you know, Mr. Bailey did it, and he did 13 years in prison on a case where he should have only did seven before he got to the parole board. And I kept telling Mr. Whelan that, but wasn't getting any help from him. I had to go into the district attorney in the 8th Judicial District, and, you know, in spite of the fact that Mr. Whelan kept ignoring me, the district attorney's office didn't even oppose it. And the next thing I knew, Mr. Bailey was out of prison. He should have been out of prison while this habeas case was pending. And that's why he's fighting this thing so bad and so hard. He just, you know, he really would like. What are the collateral consequences to this? Well, the collateral consequences. Are they if he commits another crime, then he's got a habitual criminal. Yeah, you know, and he's looking, you know, I mean, he's looking at serious federal side effects with the Armed Career Criminal Act and that kind of thing. And with regard to just the sentencing guidelines, I mean, every federal conviction is three points. If he's not an ACCA. And, you know, and he's looking at the Nevada Habitual Criminal Act, which could get him anywhere from 20 years to life without in prison. So, you know, they're not just these fake consequences because he's got a cup. I mean, you know, he's not a boy scout. He's got a conviction. I saw some reference in your briefs to an actual innocence claim. That's over now. The actual innocence claim was on habitual. Yeah. Right. Exactly. All right. So you don't have any contention that he's actually innocent of the stolen property. No, I don't. And I thank you for clarifying that. I should have clarified that. I don't. All right. I think we understand the. Do we have any additional questions? I think we understand the positions of counsel, and we thank you both for the argument. Thank you for the additional time. With that, the Court has completed the docket for today, and we stand in recess until tomorrow. All right. The score for this session stands adjourned.
judges: Goodwin, Bybee, M. Smith